UNITED  STATES  DISTRICT  COURT
DISTRICT  OF  NEW  JERSEY

**MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE**
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ   07101-0419
**(973) 645-6340**



**WILLIAM J. MARTINI**
**JUDGE**

**LETTER OPINION**

May 7, 2010

Michael Stuart McGillion
Essex-Newark Legal Services, Inc.
5 Commerce Street
Newark, NJ 07102
   *(Attorneys for Plaintiff)*

Maria Pia Fragrassi-Santangelo
Office of the U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278

Thomas C. Gray
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
   *(Attorneys for Defendant)*

   RE:   *Roldan v. Commissioner of Social Security*
         Civil Action No. 09-2182 (WJM)

Dear Counsel:

   Plaintiff Deborah Roldan ("Roldan") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI").   There was no oral argument.   Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

1

**I.      BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a forty-seven year old female who claims to suffer from back and knee pain, diabetes, hypertension, arthritis, asthma, depression, a prior history of substance abuse, and obesity.  (Administrative Transcript, hereinafter "Tr.," 18, 60-62, 126, 164). Roldan was born in Puerto Rico, grew up in the mainland United States, and presently lives in Newark, New Jersey.  (Tr. 53-54, 127).  She is fluent in English but has a limited education, having left high school without graduating.  (Tr. 23, 170).  She has not worked since 2002 and receives public assistance.  (Tr. 56, 127).  She lives alone and takes care of her daily responsibilities herself, although she has three grown children who live in Florida and sisters who help her out occasionally.  (Tr. 54-55, 127, 150, 156).  She takes public transportation to see her father every weekend and communicates with her children often.  (Tr. 71, 80).  However, she states that she does not like to leave the house or to be around people.  (Tr. 68, 85, 154).

Plaintiff filed an application for SSI on October 17, 2005, alleging disability since March 31, 2002.  (Tr. 51, 126).  Her claim was denied on July 28, 2006, and again on November 2, 2006.  (Tr. 91, 96).  Roldan subsequently requested a hearing.  (Tr. 101). At the February 27, 2008 hearing before Administrative Law Judge ("ALJ") Donna A. Krappa ("Krappa"), Roldan described her physical and mental pain arising out of her back and knee problems, diabetes, hypertension, asthma, obesity, history of substance abuse, and depression.  (Tr. 45-87).  She also testified that she suffered from the frequent need to urinate as a symptom of her diabetes and as a result was "constantly in the bathroom… every five minutes… or less."  (Tr. 59).  However, she did not request to go to the bathroom at all during the forty-five minute hearing.  She did inform the ALJ several times during the hearing that she needed to stand to alleviate her back pain, and the ALJ noted that she stood awkwardly.  (Tr. 69, 73).

The ALJ began the analysis of Roldan's claim by analyzing her medical records. (Tr. 20).  Dr. Stephen J. Conte, who treated Plaintiff after she was in a car crash in 2000 (prior to the alleged onset date) diagnosed her with a "tear of the posterior horn of the medial meniscus" and noted problems with her cervical spine, leading or contributing to her back and knee pain.  (Tr. 60-62, 193-196).  Dr. Eddie A. Rosa, Plaintiff's former primary care physician, treated her on multiple occasions between 2004 and 2005 for arthritis and disc desiccation in the lumbar spine, among other ailments.  (Tr. 241-243). Dr. Hilal Abboushi, Roldan's most recent primary care physician, submitted records indicating that he had treated her for back and knee pain frequently from 2006 – 2007. (Tr. 332, 348-349).

Roldan also provided mental health records that were reviewed by the ALJ.  (Tr. 21).  In the fall of 2006, Plaintiff sought treatment from Dr. Karen Henningson for depression that had persisted since the 2004 death of her mother.  (Tr. 305).  Dr. Henningson noted that Roldan said she did not try to seek treatment any earlier because she did not want to talk about her problems.  (Tr. 305-308).  The doctor diagnosed her with depressive disorder and noted that Roldan's depression was "characterized by not wanting

to come out of the house, not wanting to socialize, interrupted sleeping pattern, decreased interest in activities and decreased concentration." (*Id.*)

Plaintiff also had consultative examinations with Dr. R.C. Patel and Dr. Hugh D. Moore. (Tr. 22, 247, 262). Dr. Patel found that physically, Plaintiff was not in acute distress, had a normal gait, and had no abnormalities in her skin, eyes, ears, nose, and throat. (Tr. 248). He also examined Plaintiff's complaints of spine tenderness and found no spine deformity. (Tr. 249). A pulmonary function test showed no distress and no wheezing. (Tr. 251). He diagnosed Roldan with asthma, anxiety depression syndrome, diabetes mellitus, possible arthritis of the lumbosacral spine without permanent deformity, and hypertension. (Tr. 249). Dr. Hugh D. Moore performed a psychiatric consultative examination. (Tr. 262). Plaintiff reported no history of psychiatric hospitalizations, was not currently in outpatient treatment, and had only briefly been in outpatient treatment six years prior. (*Id.*) Plaintiff reported using cocaine for one year in 1990 but had never been in drug treatment and had been clean for over 13 years. (Tr. 20, 65, 262, 305). Overall, Dr. Moore concluded that Plaintiff's psychiatric problems did not appear significant enough to interfere with her ability to function on a daily basis. (Tr. 264).

ALJ Krappa evaluated the evidence and testimony according to the five step sequential evaluation process promulgated by the Social Security Administration for determining whether an individual is disabled pursuant to the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. (Tr. 16-17). As part of the process, the ALJ sent interrogatories to vocational expert ("VE") Rocca Meola ("Meola") without first submitting them to Roldan. (Tr. 116, 383-390). This omission constitutes part of Roldan's claim, as she alleges that it violated the Hearings, Appeals, and Litigation Manual ("HALLEX") I-2-5-57. (Tr. 116; Plaintiff's Brief, hereinafter "Pl. Br.," at 5). Roldan also requested a supplemental hearing with a different VE. (Tr. 117). This request was denied but Roldan was granted a supplemental hearing with Meola, which was held on July 24, 2008. (Tr. 121). Roldan's counsel questioned Meola at the hearing. (Tr. 25-44).

On August 28, 2008, the ALJ issued her opinion concluding that Roldan was not disabled pursuant to 20 C.F.R. § 416.920(g). (Tr. 12). Specifically, the ALJ made the following determinations: Plaintiff (1) had not engaged in substantial gainful activity since October 17, 2005, (2) has severe impairments which include a back disorder, diabetes, hypertension, asthma, depression, a history of substance abuse (in remission) and obesity, (3) does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in the C.F.R., (4) has the residual functional capacity to perform a range of light work, with certain limitations including that an incontinence pad could be worn, and (5) could perform jobs that exist in significant numbers in the economy. (Tr. 18-19).

Roldan requested review of the ALJ's decision by the Appeals Council. (Tr. 11, 378). On March 6, 2009, the Appeals Council denied Roldan's request. (Tr. 5-8). On May 15, 2009, Roldan filed her Amended Complaint, which is presently before the Court. Roldan alleges that the ALJ made the following errors when denying her claim: (1) the ALJ failed to follow the "special technique" required during the analysis of mental health

claims, (2) the ALJ failed to properly evaluate the evidence when considering whether her conditions met or equaled a C.F.R. listing, (3) the ALJ sent interrogatories directly to the VE without first providing Plaintiff with a copy, in violation of HALLEX, and (4) the ALJ should not have substituted her own judgment for that of a medical professional when stating that Plaintiff was limited to jobs that could be performed while wearing an incontinence pad.  (Pl. Br. at 5).   These arguments will be addressed in turn.

## II.  ANALYSIS
### A.  Standard of Review

At the administrative level, a five step process is used to determine whether an applicant is entitled to benefits.  20 C.F.R. §§ 404.1520, 416.920.  In the first step, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability.  *Id.* §§ 404.1520(b), 416.920(b).  If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe."  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant has a severe impairment or impairments, the ALJ inquires in Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the *Listing of Impairments*.  20 C.F.R. Part 404, Subpart P, Appendix 1, Part A.  If so, the claimant is deemed disabled *per se* and the inquiry ends; if not, the ALJ moves on to Step Four.  *Id.* §§ 404.1520(d), 416.920(d).  In the fourth step, the ALJ decides whether, despite any severe impairment(s), the claimant retains the residual functional capacity ("RFC") to perform past relevant work.  *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f).  The claimant bears the burden of proof at each of these first four steps.  At Step Five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

The district court reviews the ALJ's application of the law *de novo*.   *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986).  On the other hand, factual findings are reviewed to determine whether they are supported by substantial evidence. *See Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).   When substantial evidence for an ALJ's factual findings exists, this Court is bound by those determinations of the ALJ. *See id.* (citing 42 U.S. § 405(g)).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Srvcs.*, 48 F.3d 114, 117 (3d Cir. 1995)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  Under the substantial evidence standard, the district court is required to review the record as a whole.  *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  If there is more than one rational interpretation of the evidence in the record, this Court must accept the conclusions of the ALJ and affirm his decision.  *See Izzo v. Comm'r of Soc. Sec.*, 186 F. Appx. 280, 284 (3d Cir. 2006).   The Court is "not permitted to weigh the evidence or substitute [its] own

conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431.

Additionally, the Third Circuit requires an ALJ to "set forth the reasons for his decision," so that the district court can conduct meaningful judicial review. *See Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000). However, the ALJ is not required to use any particular language or follow any specific formula, as long as sufficient details are provided to allow for meaningful judicial review. *Jones*, 364 F.3d at 505.

> **B.     The ALJ's Alleged Failure to Follow the "Special Technique" for Evaluating Mental Health Disabilities**

Plaintiff's first argument is that the ALJ erred by failing to follow the "special technique" for the evaluation of mental health disabilities set out in 20 C.F.R. § 416.920a. (Pl. Br. at 5, 27-28). Plaintiff also argues that the ALJ erred in not fully analyzing her history of substance abuse and that the ALJ improperly found Plaintiff's testimony to lack credibility. (*Id*.). All three of these arguments are unavailing.

The "special technique" established in 20 C.F.R. § 416.920a requires that the ALJ determine the severity of the claimant's mental impairment by assessing the degree to which the alleged impairment interferes with the claimant's ability to function independently. *See* 20 C.F.R. § 416.920a. An examination of the ALJ's opinion indicates that she did precisely this. ALJ Krappa went through the record and thoroughly examined the evidence related to Plaintiff's mental health. She explicitly assessed Plaintiff's claims of mental impairment under the criteria of paragraphs B and C of 20 C.F.R. § 416.920a in reliance on the evidence in the record. (Tr. 18). She noted that mental examination findings were minimal and that Plaintiff was found to be cooperative, coherent, fully oriented, and goal directed with no evidence of psychosis. (*Id*.). She also noted that Plaintiff told physicians she had a boyfriend, got along well with multiple family members, was able to complete daily living activities by herself, and could use public transportation. (*Id*.). Finally, the ALJ noted Dr. Moore's opinion and his indication of essentially normal psychiatric findings. (Tr. 22). Thus, the ALJ concluded that Plaintiff's mental impairment, while "severe," resulted in only a "mild" restriction in her activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 18). The ALJ followed the guidelines of 20 CFR § 416.920a and reached a conclusion more than substantially supported by the evidence.

The ALJ also properly evaluated Plaintiff's substance abuse problem and credibility. Citing the record, the ALJ noted that Plaintiff had not used illegal drugs in 15 years. (Tr. 20). In addition, Plaintiff testified at the 2008 hearing that she had not used drugs in 15 years, and she told Dr. Moore that she had only used cocaine for one year ever. (Tr. 65, 263, 376). There was no medical evidence in the record indicating that Plaintiff's

past drug use had any effect upon her ability to function during the relevant time period. (Tr. 263). Furthermore, a substance abuse problem is relevant only if the ALJ finds that the claimant has another disability; it cannot count as a disability on its own. 20 C.F.R. § 416.935.

Finally, the ALJ properly evaluated Plaintiff's credibility by noting the numerous discrepancies and contradictions between Plaintiff's testimony and the multiple sources of medical evidence. (Tr. 19-20). Indeed, she noted that although Plaintiff claimed to have no energy and was always fatigued, her reported daily living activities included making coffee, making her bed, doing household chores, and taking public transportation. (Tr. 20; *see* Tr. 67-68, 70, 72, 156-158). Moreover, while Plaintiff claimed to need to use the bathroom every five minutes or less, the ALJ noted that she did not request to use the restroom even once during the forty-five minute hearing and that there were no records of complaints of frequent urination in her medical files. (Tr. 20, 22; *see* Tr. 241-246, 332-357). An ALJ has discretion to evaluate a claimant's credibility, including inconsistencies in her statements of record, in making a determination. *See Boyce v. Barnhart*, 66 Fed. Appx. 297, 300 (3d Cir. 2003). Given the totality of the evidence in the record, the ALJ's conclusion that Plaintiff's subjective complaints were not credible to the degree alleged was reasonable. *See* 20 C.F.R. § 416.929(c); SSR 96-7p. The ALJ's RFC determination was therefore supported by substantial evidence.

**B.   The ALJ's Alleged Failure to Analyze Whether Plaintiff's Multiple Impairments Met or Equaled One or More of the Listed Impairments**

Plaintiff's next argument is that the ALJ failed to properly analyze whether her impairments met or equaled one or more of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. (Pl. Br. at 5, 31). Specifically, Plaintiff argues that the ALJ considered Plaintiff's mental disorder and compared it to the 12.04 mental disorders listing category but improperly failed to consider it with respect to other listing categories. (Pl. Br. at 31). In addition, she argues that the ALJ failed to consider any of Plaintiff's other impairments (asthma, back and knee impairments, diabetes, and obesity) with respect to the C.F.R. listings. (Pl. Br. at 32-33).

Plaintiff acknowledges that the ALJ considered her mental impairment with respect to the 12.04 listing category (affective disorders characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome) but argues that the ALJ was also required to compare it to additional listing categories. (Pl. Br. at 31). However, Plaintiff fails to identify an alternative listing category that might be more appropriate. Furthermore, there is no indication whatsoever that any other listing category, including 12.02 (Organic Mental Disorders), 12.03 (Schizophrenic, Paranoid, and Other Psychotic Disorders), 12.05 (Mental Retardation), 12.06 (Anxiety Related Disorders), 12.07 (Somatoform Disorders), 12.08 (Personality Disorders), 12.09 (Substance Addiction Disorders), and 12.10 (Autistic Disorder and Other Pervasive Developmental Disorders) would have been applicable to Plaintiff.

Plaintiff also argues that the ALJ failed to accurately analyze her additional

6

impairments in connection with C.F.R. listings.  (Pl. Br. at 32-33).  Again however, Plaintiff fails to demonstrate which listings would have been met by her ailments.  Moreover, an objective examination of the evidence and Plaintiff's allegations shows that no listings could plausibly be met by Plaintiff's conditions.  The CFR listing for asthma requires that an individual have had at least six asthma attacks requiring physician intervention in one year, whereas Plaintiff only had one (and even that one incident was primarily related to her bout of pneumonia).  (Tr. 197-203).  The listings for musculoskeletal impairments require that the individual have severe difficulties walking, whereas the consultative physician observed that her gait was normal.  (Tr. 248, 263).  The listing for diabetes requires persistent disorganization of motor function in two extremities, and there is no evidence or even allegation that Plaintiff had any disorganization of motor function in any extremity.  Finally, given the above cited evidence, it is apparent that Plaintiff's obesity was not itself equivalent to a listing nor did it exacerbate any of Plaintiff's other impairments to the level of a listing.

     To the extent that Plaintiff argues the ALJ failed to consider the combination of her impairments, Plaintiff does not state which ones she believes would be met and the evidence shows that in fact, none are met, even when Plaintiff's impairments are considered together.  The ALJ cited the above referenced evidence throughout her opinion, showing that she performed a sufficient analysis and that her conclusion, that no listings were met, was reasonable and supported by substantial evidence.  (Tr. 20-23).

C.    **The ALJ's Alleged Failure to Follow Social Security Procedure In Procuring Vocational Expert Testimony**

     Plaintiff alleges that the ALJ improperly obtained vocational expert testimony during her Step Five analysis pertaining to the availability of jobs that Plaintiff would be able to perform.  (Pl. Br. at 5, 33).  According to HALLEX I-2-5-57, before interrogatories are sent to a vocational expert, they must be given to Plaintiff's representative for review.  *See* HALLEX I-2-5-57.  Here, it is undisputed that the ALJ sent the interrogatories directly to VE Meola, without providing Plaintiff with the opportunity to make objections in advance.  However, Plaintiff does not state which questions she would have objected to nor make any kind of showing that her objections would have been granted.  More importantly, as Defendant observes, HALLEX is meant to provide an ALJ with guidelines only and does not carry the weight of law.  *See* HALLEX I-1-0-1; *Edelman v. Commissioner*, 83 F.3d 68, 71, n.2 (3d Cir. 1996) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)).  Indeed, the Third Circuit recently concluded that HALLEX does not create "judicially-enforceable rights."  *Bordes v. Commissioner*, 235 Fed. Appx. 853, 859 (3d Cir. 2007).  Furthermore, the Third Circuit determined that even if the more stringent approach employed by the Fifth Circuit were to govern, there is no violation of fundamental fairness when the claimant fails to demonstrate harm as a result of a failure to abide by HALLEX.  *Id*. (citing *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000)).

     Finally, HALLEX assumes that interrogatories are to be used in the absence of live

7

testimony. Indeed, the manual provides that the preferred method of obtaining the opinion of a VE is via live testimony such that both sides have the opportunity to ask questions in person. HALLEX I-2-5-57. Here, after VE Meola responded to the interrogatories, a second hearing was held on July 24, 2008, at which Meola testified and answered questions from the ALJ and counsel for Plaintiff. (Tr. 25-44). Plaintiff argues that Meola's testimony was biased because he had already completed the interrogatories. (Pl. Br. at 36). However, Plaintiff does not explain how Meola's completion of the interrogatories would have led to bias. Given that the interrogatories involved a series of questions, each one dealing with a different hypothetical situation and requiring the VE to set aside and disregard the facts of the prior hypothetical situation, it is difficult to see how this would cause him to display bias during the hearing. (*See* Tr. 116, 383-390). Thus, Plaintiff was able to obtain VE testimony using the preferred method. Plaintiff did not suffer any harm, and her allegation that the ALJ improperly developed the VE testimony lacks merit.

### D. The ALJ's Alleged Abuse of Discretion in Determining that Plaintiff was Limited To Jobs That Could Be Performed While Wearing An Incontinence Pad

Plaintiff asserts that her frequent need to urinate prevents her from concentrating for more than one-third of the day. (Pl. Br. at 38). Therefore, at step five of the analysis, the ALJ concluded that Plaintiff could perform a range of light work with certain limitations, including that she be restricted to jobs that could be performed while wearing an incontinence pad. (Tr. 23). Plaintiff argues that it was error for the ALJ to include this limitation because in so doing, she substituted her lay opinion for that of a medical expert. (Pl. Br. at 37). Plaintiff further argues that including this limitation was erroneous because there is no medical support for her claim of frequent urination. (Pl. Br. at 36).

Plaintiff's arguments are unavailing. At the outset, given that Plaintiff concedes the lack of medical support for her claim of frequent urination, her claim that she can only concentrate for one-third of the day due to frequent urination of the day is without merit. Furthermore, Plaintiff misconstrues the ALJ's position. Plaintiff appears to believe that if the ALJ had not included the incontinence pad limitation, she would have credited Plaintiff's claim that she could only concentrate for one-third of the workday, an impediment which the VE opined would mean there were no available jobs in the national or regional economy which Plaintiff could perform. (Tr. 40-41). But this is not the case. The ALJ stated that she did not find Plaintiff's claims of frequent urination credible, given the lack of supporting medical evidence and the fact that Plaintiff did not ask to use the restroom once during the forty-five minute hearing. (Tr. 23). Indeed, Plaintiff concedes the lack of medical support for this claim. (Pl. Br. at 36). Therefore, even if the ALJ had not included the incontinence pad limitation, she would not have found that Plaintiff could only concentrate for one-third of the day. Rather, she gives every indication that she would have rejected the claim outright. As ALJ Krappa's opinion states, she found Plaintiff's claims about needing to urinate every five minutes to be incredible. (Tr. 23).

The ALJ added in the incontinence pad limitation only to give Plaintiff "the benefit of the doubt." (*Id*.). If the ALJ had not included the incontinence pad limitation, the pool of possible jobs would only have been larger, not smaller and certainly not non-existent. Therefore, any mistake that the ALJ made was in Plaintiff's favor and certainly did not harm her. This argument must be denied.

### III. CONCLUSION

For the reasons stated above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

/s/ William J. Martini<br>
**WILLIAM J. MARTINI, U.S.D.J.**